NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | | |
|---|---|---|
| Paula R., | : | |
| | : | |
| Plaintiff, | : | Civil No. 20-18808 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff Paula R.'s Appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Disability Insurance benefits, Disabled Widow's benefits, and Supplemental Security Income. For the reasons set forth below, the Commissioner's decision is **VACATED** and **REMANDED**.

**I.    PROCEDURAL HISTORY[1]**

In January 2018, Plaintiff filed applications seeking Social Security Disability Insurance benefits, (ECF No. 7, R. at 24, 238–39), Disabled Widow's benefits, (R. at 24, 246–52), and Supplemental Security Income benefits, (R. at 24, 228–37, 240–41), alleging an onset of disability on June 10, 2015. These applications were denied in July and August 2018, (R. at 141–155), and denied again upon reconsideration on September 14, 2018, (R. at 160–68). Plaintiff

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and relevant to the issues upon appeal. The Court cites to the administrative record as "R." Background facts and medical history are set forth in a separate section below.

1

then requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 169–171). On December 3, 2019, a hearing was held before ALJ Jennifer Pustizzi. (R. at 31–72). On January 30, 2020, ALJ Pustizzi issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 9–24). Plaintiff appealed ALJ Pustizzi's decision to the Appeals Council on March 23, 2020. (R. at 225–27). The Appeals Council denied Plaintiff's request for review on October 22, 2020, (R. at 1–6), and ALJ Pustizzi's 2020 decision became the final decision of the Commissioner of Social Security. On December 12, 2020, Plaintiff appealed the matter to this Court. (ECF No. 1).

## II. LEGAL STANDARD

### A. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the

analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that she cannot perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B. Review of the Commissioner's Decision

This Court reviews the ALJ's application of the law under a de novo standard and the ALJ's factual findings under a "substantial evidence" standard. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007) (citing 42 U.S.C. 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); and *Monsour Med. CR. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

This Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The

Court must set aside the Commissioner's decision if it did not consider the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114).

## III.   FACTUAL BACKGROUND

Plaintiff Paula R. was born on March 6, 1976. (R. at 229). She currently lives with her boyfriend. (R. at 59). Plaintiff was married; Plaintiff's husband passed away in 2009. (*Id.*) Plaintiff testified that she lived with and cared for her mother for seven years until her mother passed away in 2019. (R. at 45–46, 60). Plaintiff relied on others to help care for her mother during this time. (*Id.*)

Plaintiff received her GED in 1984. (R. at 298). Plaintiff testified that she has been on medication for anxiety since she was twenty years old but has not spoken to a therapist in a long time. (R. at 44). She previously worked as a waitress, (R. at 42), as well as a forklift driver and deli clerk at a supermarket, (R. at 298). In 2014, Plaintiff was involved in an automobile accident and has not returned to work since due to her migraines, back pain, and panic attacks. (*Id.*)

### A.   The ALJ's Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, June 10, 2015. (R. at 15). At Step Two, the ALJ found that Plaintiff had the following severe impairments: anxiety, migraines, and degenerative disc disease. (*Id.*) At Step Three, the ALJ found that none of Plaintiff's impairments met or medically equaled the

4

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15–17).

The ALJ then constructed Plaintiff's residual functional capacity ("RFC"), finding that, during the relevant period:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she: can handle, finger, and feel frequently bilaterally; can climb ramps and stairs occasionally; can stoop occasionally; can crouch occasionally; can never work at unprotected heights or with hazardous machinery; is limited to work in no louder than moderate noise; is able to perform simple tasks and have occasional interactions with the general public.

(R. at 17).

At Step Four, the ALJ concluded that Plaintiff had no past relevant work. (R. at 22). At Step Five, based on the above analysis and the testimony of a Vocational Expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on her age, RFC, education, and work experience, such as a photocopy machine operator, laundry sorter, and bagger. (R. at 22–23). Accordingly, the ALJ concluded that Plaintiff was not disabled at any time between her alleged disability onset date and the date of the ALJ's decision. (R. at 23).

## IV. DISCUSSION

Plaintiff raises three challenges on appeal. *See* (ECF No. 10, Pl. Br. 16–30). Plaintiff contends that the ALJ erred: (1) in finding that Plaintiff's impairments did not meet the requirements of the Listing of Impairments at Step Three; (2) by failing to provide adequate rationale for her RFC findings, such that the RFC is not supported by substantial evidence; and (3) in finding that there are alternative jobs Plaintiff can perform that exist in substantial numbers in the national economy at Step Five. (*Id.*) We begin with Plaintiff's Step Three challenge.

### A. Step Three

#### i. Listing 1.04

Plaintiff challenges the ALJ's finding that Plaintiff did not meet the requirements of the Listing of Impairments § 1.04, which covers spinal disorders. (Pl. Br. 16–17); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. The ALJ concluded that "the medical evidence does not adequately establish the motor loss and sensory or reflex loss required by listing 1.04." (R. at 16). Plaintiff argues that the ALJ was required to explain how she reached this conclusion but failed to do so. (Pl. Br. 16–17).

> To satisfy Listing 1.04, Plaintiff must prove that she has a disorder of the spine:
>
> ([E].g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.[2]

"For a claimant to show [her] impairment matches a listing, it must meet all of the specified medical criteria." *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004) (citation

---

[2] We consider the Listing requirements as they existed when the ALJ rendered her decision in this case.

omitted). "Although it is the plaintiff's burden to present evidence that the impairment meets the listed requirements, the ALJ still has the duty to support his determinations by discussing the evidence." *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 370 (D.N.J. 2013) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000)). There must be "sufficient development of the record and explanation of findings to permit meaningful review" of the ALJ's decision, when read as a whole. *Jones*, 364 F.3d at 505.

It is undisputed that Plaintiff suffers from degenerative disc disease—a spinal disorder. (R. at 15–16). However, Plaintiff does not explain how the medical evidence supports a finding that she meets the requirements of Listing 1.04, stating only that the ALJ recounted "numerous tests and diagnostic studies … show various results but at one time or another do show evidence of spinal impingement, muscle spasm, radiculopathy and even pain on straight leg raising but still a negative straight leg raising test along with treatments that have included injections, physical therapy, and chiropractic care." (Pl. Br. 16). She points to no evidence of motor and sensory or reflex loss, spinal arachnoiditis, or an inability to ambulate effectively, as would be required to satisfy the criteria of § 1.04(A), (B), or (C), respectively. Accordingly, even if the ALJ erred by not providing a sufficient explanation as to her finding regarding Listing 1.04, Plaintiff has failed to show that this was a harmful error. *See Domkos v. Colvin*, No. CV 15-2660 (JLL), 2016 WL 1732380, at *3 (D.N.J. May 2, 2016) (declining to remand where the plaintiff "[did] not point the Court to specific record evidence supporting his argument that Listing 1.04A was met; he only points to certain of the points highlighted by the ALJ. He also [did] not offer analysis or case support for why Listing 1.04A was met in this case. It is not enough to simply call foul and punt to this Court for research and analysis").

7

And though the ALJ's Step Three analysis is admittedly brief, the ALJ discusses the medical evidence with respect to Plaintiff's back impairments at length later in her RFC analysis. (R. at 18–20). *See Rivera v. Comm'r of Soc. Sec.*, No. CV 16-1610 (ES), 2017 WL 3783698, at *6 (D.N.J. Aug. 31, 2017) (rejecting a plaintiff's Step Three challenge where the ALJ's "analysis of medical evidence in his step-four determination provides sufficient support for his step-three conclusion that Plaintiff's impairments failed to meet or equal any listings"). For example, the ALJ observed that Plaintiff "demonstrated intact reflexes in the upper and lower extremities, good hand grasp, a physiologic gait, an intact ability to heel and toe walk, good extensor hallucis longus strength, and negative straight leg raising" in a 2015 examination with Dr. Weisband. (R. at 19). The ALJ also highlighted a 2017 "musculoskeletal examination revealed normal range of motion in all areas and no tenderness, decreased strength, sensory deficits, inflammatory conditions, or gait problems." (*Id.*) She further discussed Dr. Sarmiento's report of "normal neurologic testing, including physiologic and equal deep tendon reflexes and 5/5 strength in the upper and lower extremities" in 2018, as well as Dr. Dructor's finding that Plaintiff "demonstrated no focal deficits and normal sensation, reflexes, coordination, muscle strength, and tone[.]" (R. at 20). Thus, substantial evidence supports the ALJ's Step Three conclusion that Plaintiff did not meet the requirements of Listing 1.04 and any error was harmless. *See Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) ("[I]n reviewing the voluminous medical evidence available to us, we found abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence. Therefore, we hold that here the ALJ's conclusory statement in step three was harmless.").

    ii.   **Listing 12.06**

Plaintiff next disputes the ALJ's finding that Plaintiff's mental impairment did not meet the "B" criteria of Listing 12.06. (Pl. Br. 17–21). To meet the requirements of Listing 12.06, a claimant must meet the Listing's "A" criteria *and* either the "B" or "C" criteria. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.06. To meet the "B" criteria, a claimant must show an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning": (1) "[u]nderstand, remember, or apply information"; (2) "[i]nteract with others"; (3) "[c]oncentrate, persist, or maintain pace"; and (4) "[a]dapt or manage oneself[.]" *Id.* A "marked" limitation represents a "seriously limited" ability to function in a given area "independently, appropriately, effectively, and on a sustained basis," while an "extreme" limitation indicates a total inability to function "independently, appropriately, effectively, and on a sustained basis." *Id.* at § 12.00F2.

Here, the ALJ found that Plaintiff had moderate limitations in her ability to understand, remember, or apply information, interact with others, and concentrate, persist, or maintain pace. (R. at 16). A moderate limitation indicates a "fair" ability to function in these areas. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00F2. She also found that Plaintiff had mild limitations in her ability to adapt or manage herself. (R. at 16).

Plaintiff argues that the ALJ fails to establish a "logical nexus" between the facts cited in the decision and ALJ's conclusion that Plaintiff had a "moderate" limitation, rather than a "marked" or "extreme" limitation, in the first three areas of functioning. (Pl. Br. 18–21). This argument is unavailing. When examining Plaintiff's mental impairment at Step Three, the ALJ properly considered the evidence provided, including Plaintiff's own testimony, and explained the basis for her conclusion regarding each area of functioning with cites to evidence in the record. Her findings permit meaningful judicial review, *see Burnett*, 220 F.3d at 120, and are supported by substantial evidence. We agree with the Commissioner's assertion that Plaintiff is

9

essentially asking this Court to reweigh the medical evidence—something that we cannot do. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); *Campbell v. Berryhill*, No. CV 17-1714, 2018 WL 3575255, at *7 (E.D. Pa. July 25, 2018) (rejecting Plaintiff's argument that, contrary to the ALJ's findings, "[her] daily activities suggest that she is not able to sustain work at any level of exertion on a regular and consistent basis" because "[i]n making this argument, Plaintiff essentially asks the Court to reweigh the evidence and reach a different conclusion"). As such, remand is not warranted on this issue.

### B. Residual Functional Capacity

#### i. Subjective Complaints of Pain

Plaintiff contends that the ALJ erred in formulating the RFC because the ALJ "fails to take into account [Plaintiff's] testimony as to the physical pain she experiences" due to her spinal impairment and migraines. (Pl. Br. 22).

Credibility determinations are "virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x. 678, 681 (3d Cir. 2015) (citation omitted). An ALJ need only "give the claimant's testimony 'serious consideration,' state her reasons for accepting or discounting it, and make 'specific findings.'" *Pergentile v. Berryhill*, No. 16-cv-1381, 2018 WL 5730173, at *8 (D.N.J. Nov. 1, 2018) (quoting *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003)). When this occurs, "a reviewing court will defer to the ALJ's credibility determination." *Id.*; *see also Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188–89 (3d Cir. 2007) ("Where, as here, the ALJ has articulated reasons supporting a credibility determination, that determination will be entitled to 'great deference.'" (citation omitted)).

The ALJ began the RFC analysis by summarizing Plaintiff's testimony:

> [Plaintiff] described symptoms including chronic pain at various body sites, including her neck, lower back, and knees, hand numbness, migraine headaches almost daily, anxiety with panic attacks in crowded places, and problems with focus and concentration. The claimant alleged difficulty with activities such as lifting, standing, walking, sitting, reaching, postural movements, using her hands, completing tasks, getting along with others, and handling stress. She estimated she can only do minor lifting of approximately 10 pounds and can stand for 15 minutes and walk for one half-block before needing to rest, adding she also cannot sit for prolonged periods and has a need to adjust positions regularly due to pain. The claimant described significantly diminished activities of daily living due to her symptoms, but also acknowledged generally being able to perform self-care tasks, prepare simple meals, participate in the care of her mother until she passed away in mid-2019, and do some reading.

(R. at 18). The ALJ then concluded that "the overall record simply does not contain evidence consistent with the extensive degree of reduced functioning alleged by the claimant." (*Id.*)

With respect to Plaintiff's spinal impairment, the ALJ recounted Plaintiff's extensive treatment history for her spinal impairment in the RFC analysis. (R. at 18–20). She concluded that the medical record "reflect[ed] moderate objective findings, mostly stable symptoms, and adequate functioning with fairly routine and conservative management, primarily with medications, physical and chiropractic therapy, acupuncture, and periodic injections." (R. at 18). We find that the ALJ properly considered Plaintiff's allegations of pain in conjunction with the medical evidence in the record and adequately explained her reasons for discounting Plaintiff's testimony regarding the severity and functional impact of Plaintiff's back pain.

With regard to Plaintiff's migraines, the ALJ found that:

> [L]ongitudinal medical records document a history of migraine headaches. However, a November 2014 CT scan of the brain was normal and treatment records reflect fairly routine management of the claimant's migraines with a regimen of sumatriptan…. As recently as June 2019, Dr. Dructor described the claimant's migraines as not intractable and without status migrainosus….

(R. at 20) (internal citations omitted).

To the extent Plaintiff argues that the ALJ did not offer proper reasons for discounting Plaintiff's claims of severe pain due to migraines, (Pl. Br. 23), the record shows that the ALJ considered Plaintiff's reports of pain in conjunction with the available medical evidence and Plaintiff's activities of daily living, highlighting, *inter alia*, Plaintiff's "fairly routine" treatment regimen for her migraines, (*id.* at 18–22). Indeed, Plaintiff acknowledged that she has not sought treatment from a neurologist or other specialist for her migraine pain. (R. at 47). And while there is no requirement that a migraine be "intractable" to be severe, the fact that Plaintiff's migraines are not intractable is an appropriate fact for the ALJ consider when evaluating the extent of Plaintiff's functional limitations stemming from her migraines. While Plaintiff clearly disagrees with the ALJ's reasoning here, this does not mean that the ALJ erred in her analysis.

In sum, we find that the ALJ gave serious consideration to Plaintiff's testimony and sufficiently explained her reasons for finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. at 18). Accordingly, we defer to the ALJ's credibility determination.

### ii. Mental Health

Plaintiff argues that that the mental limitations included in Plaintiff's RFC are "internally inconsistent" given the ALJ's finding at Step Three that Plaintiff had a moderate impairment in her ability to interact with others and to concentrate, persist, and maintain pace. (Pl. Br. 23–24). She asserts that "there is simply no way to reconcile the found [Step Three] restrictions with the [ALJ's] ultimate conclusion" that Plaintiff is limited to simple tasks and occasional interactions with the public. (*Id.* at 24). With respect to Plaintiff's mental health, the ALJ noted that:

> [M]edical records do document a history of anxiety, as mentioned previously, for which the claimants' primary care providers have prescribed her alprazolam for

use as needed, but providers have also consistently noted cooperative behavior and normal attention span and concentration during examinations and the claimant has denied any specialized mental health treatment….

(R. at 20).

As Defendant notes, "the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). At the same time, "those findings are relevant to that statement of the limitation, which must be sufficient to reflect all of a claimant's impairments." *Id.* at 210.

### (1) Simple Tasks

With respect to the "simple tasks" limitation, in particular, the Third Circuit explained in *Hess v. Commissioner Social Security* that "as long as the ALJ offers a valid explanation, a simple tasks limitation is permitted after a finding that a claimant has moderate difficulties in concentration, persistence, or pace." *Id.* at 211 (internal quotation marks omitted). "The relationship between 'simple tasks' limitations and 'concentration, persistence, or pace' is a close one. Indeed, such limitations directly encompass and anticipate a minimal level of ability in that functional area." *Id.* at 212.

To the extent Plaintiff is attempting to argue that the ALJ failed to provide a valid explanation for the "simple tasks" limitation in the RFC, (Pl. Br. 24), we find this argument unpersuasive.[3] The ALJ acknowledged Plaintiff's self-reported difficulty with concentration. (R. at 18). However, she also highlighted that Plaintiff reports of "generally being able to perform self-care tasks, doing some simple meal preparation and household chores, albeit with periodic rest breaks, shopping, managing money, reading, and playing board games [,]" (R. at 22), and that "providers have … consistently noted … normal attention span and concentration during examinations[,]" (R. at 20); *see also* (R. at 433, 451, 466). Plaintiff does not identify, nor can the

---
[3] Plaintiff does not discuss *Hess* in her briefing.

13

Court discern, any medical evidence in the record pertaining to Plaintiff's ability to concentrate, persist, or maintain pace that the ALJ overlooked in formulating the RFC. The ALJ considered all of the relevant evidence and provided a valid explanation for including a "simple tasks" limitation in the RFC. As such, we affirm on this issue.

### (2) Occasional Interactions with the General Public

Plaintiff asserts that the ALJ did not adequately account for Plaintiff's moderate social limitations in interacting with others in the RFC. (Pl. Br. 23–24). Though difficult to make out, it appears that Plaintiff is claiming that the limitation that Plaintiff could only have "occasional interactions with the general public[,]" (R. at 17), is insufficient because the ALJ "makes no mention of how [Plaintiff's moderate impairment in interacting with others] impacts her ability to interact with supervisors."[4] (Pl. Br. 23–24, 28–29); (ECF No. 14, Pl. Reply 13–14).

To allow for meaningful judicial review, the ALJ is required to set out a specific factual basis for each finding. *Neal v. Comm'r of the SSA*, No. 18-2407, 2019 U.S. Dist. LEXIS 123701, at *16 (D.N.J. July 23, 2019) (citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)). According to Plaintiff's testimony, Plaintiff's anxiety and panic attacks prevent her from being in crowds.[5] (R. at 54–55). The ALJ acknowledged this in the RFC analysis, concluding that Plaintiff's "mental impairments limit her to simple work activities with a reduced degree of social interaction." (R. at 18). However, the sole limitation pertaining to social interactions in the RFC is the limitation that Plaintiff can only occasionally interact with "the general public." (R. at

---

[4] This specific argument was made in the context of Plaintiff's Step Five challenge. (Pl. Br. 28–29); (Pl. Reply 13–14). She argues that the hypothetical the ALJ posed to the vocational expert was flawed, because the ALJ failed to account for Plaintiff's moderate limitation in her ability to interact with others when formulating the RFC. (*Id.*) "[T]he Third Circuit has explained that 'objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself.'" *Bruce v. Berryhill*, 294 F. Supp. 3d 346, 357 (E.D. Pa. 2018) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005)). Such is this case here and, accordingly, we incorporate Plaintiff's Step Five argument in this section to the extent it is relevant to the instant discussion.
[5] In her testimony, Plaintiff indicated that to her a "crowd" is three or more people. (R. at 55).

17). In the RFC and subsequent analysis, the ALJ fails to indicate whether this limitation applies to Plaintiff's co-workers and supervisors in addition to the public and, if not, why this additional restriction is not necessary. We can assume the ALJ believed no such limitation was necessary, but the ALJ never made a specific finding on this point.

Though a very close call, we believe this omission constitutes remandable error. None of the proffered reasons explain why the ALJ determined that Plaintiff is only able to interact occasionally with the public but is able to interact with co-workers and supervisors without restriction. The fact that Plaintiff was "cooperative" with medical providers during appointments, (R. at 20), does not necessarily demonstrate that Plaintiff can adequately and routinely interact with supervisors and co-workers at a full-time job. And while the fact that Plaintiff had not sought additional mental health treatment is relevant to the ALJ's analysis, it is not sufficient to explain the ALJ's determination that Plaintiff must have restricted contact with certain groups of people at work—the public—but not others—co-workers and supervisors. Plaintiff did not work during the relevant period and thus had no occasion to interact with supervisors or co-workers.

To be clear, the Court is not suggesting that the ALJ must find on remand that Plaintiff can only occasionally interact with her colleagues. We simply require the ALJ to make a finding on this issue and adequately explain her reasoning. *Cf. Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) (explaining that "an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests"). We remand on this issue.

### iii. Medical Opinion Evidence

Plaintiff's argument here is not clear. As best the Court can discern, Plaintiff appear to contend that Dr. Sarmiento and Dr. Minzter's opinions are vague and that the ALJ should have recontacted the physicians to clarify their conclusions as to Plaintiff's functional capacity. (Pl.

Br. 24–26). Plaintiff further takes issue with the ALJ's willingness to find Dr. Sarmiento's allegedly vague opinion persuasive, while finding Dr. Mintzer's similarly vague opinion not persuasive.[6] (*Id.*)

When determining a claimant's ability to work, the ALJ must consider all relevant evidence, including the medical records, medical source statements, and the individual's testimony. 20 C.F.R. § 404.1545(a). Generally, the ALJ must evaluate all the medical opinions in the record under the factors set forth in 20 C.F.R. § 416.927 and resolve any conflicts. The ALJ may choose which medical evidence to credit and which to reject as long as they provide a rational basis for the decision. *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999). With regard to an ALJ's obligation to recontact medical sources, the application regulation states:

> [O]ur rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

SSR 96–5p. Subsequently enacted regulations have modified SSR 96–5p, such that "recontacting a medical source is now discretionary" rather than mandatory. *Bryson v. Comm'r of Soc. Sec.*, 639 F. App'x 784, 787 n.8 (3d Cir. 2016) (citing 20 C.F.R. § 404.1520b(c)–(d)).

Dr. Sarmiento concluded that Plaintiff "would not be limited in walking and standing with reasonable breaks and would be able to sit for a reasonable amount of time with needed breaks. He also assessed no significant balance limitations, good functionality of the bilateral hands, including an ability to handle fine and small-sized objects and no significant limitations to fingering." (R. at 20). The ALJ found his opinion to be persuasive, noting:

---

[6] Plaintiff suggests that the ALJ gave greater weight to the State Agency physicians than to the opinions of Plaintiff's other medical providers. (Pl. Br. 25). This is incorrect; the ALJ found the opinions of the State Agency consultants to be "not persuasive." (R. at 21).

16

> Dr. Sarmiento's assessment is supported by the relatively modest findings of his own examination and is generally consistent with the substantial evidence of record reflecting fairly conservative treatment modalities and failing to show any physiologic deficits impacting the claimant's ability to ambulate or perform other activities within the above residual functional capacity.

(R. at 21).

We find no error in the ALJ's choice not to recontact Dr. Sarmiento or her determination that Dr. Sarmiento's opinion was persuasive. In formulating the RFC, the ALJ evaluated Dr. Sarmiento's conclusions in conjunction with Plaintiff's subjective complaints of pain, Dr. Sarmiento's examination findings, and the extensive available medical evidence regarding Plaintiff's physical impairments. (R. at 19–21). Plaintiff does not claim that Dr. Sarmiento's opinion is internally inconsistent or inconsistent with other available evidence in the record. Nor does Plaintiff explain how the RFC might have been meaningfully different had the ALJ recontacted Dr. Sarmiento. Thus, even assuming that Dr. Sarmiento's conclusions are vague, Plaintiff has not shown that the ALJ committed a harmful error in failing to recontact the doctor or in finding his opinion persuasive.[7] *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) ("Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals.")

With regard to Dr. Mintzer, the ALJ found that Dr. Mintzer's opinion that Plaintiff's mental limitations were "moderate to severe in degree" was "vague" because he had not conducted a function-by-function analysis. (R. at 21). The ALJ acknowledged that "Dr. Mintzer's descriptor of severity might be interpreted to suggest the claimant is considerably

---

[7] Plaintiff's citations to this Court's decisions in *Layton v. Comm'r of Soc. Sec.*, No. CV 19-9120 (RBK), 2020 WL 1616424, at *6 (D.N.J. Apr. 2, 2020), *Dennis v. Comm'r of Soc. Sec.*, No. CV 19-18514 (RBK), 2020 WL 3989647, at *9 (D.N.J. July 15, 2020), and *Sheryl W. v. Comm'r of Soc. Sec.*, No. CV 19-19127 (RBK), 2020 WL 7258623, at *7 (D.N.J. Dec. 10, 2020), are inapposite. We remanded in those cases because the ALJ had failed to recontact a treating physician who had opined on the ultimate issue of disability—an issue reserved to the Commissioner—and the ALJ rejected those physician's opinions on that basis. *Layton*, 2020 WL 1616424, at *6; *Dennis*, 2020 WL 3989647, at *9; *Sheryl W.*, 2020 WL 7258623, at *7. Here, neither Dr. Minzter nor Dr. Sarmiento opined that Plaintiff was disabled.

17

limited in the performance of some basic mental work-related activities" but determined that Dr. Mintzer's conclusions were not supported by "the treatment records discussed previously" and the doctor's own moderate examination findings. (*Id.*)

As above, Plaintiff has not met her burden of demonstrating how the ALJ's failure to recontact Dr. Mintzer was harmful, *Holloman*, 639 F. App'x at 814, especially given the ALJ seemingly accounted for at least some of Plaintiff's moderate mental limitations in formulating the RFC, (R. at 17) (limiting Plaintiff to simple tasks and only occasional interactions with the public). We will not construct Plaintiff's arguments for her. Further, Plaintiff does not challenge the ALJ's finding that Dr. Mintzer's conclusions were inconsistent with the record. The ALJ was entitled to discount his opinion on that basis. Thus, remand is not needed on this issue.

### C.  Step Five

Plaintiff argues that the ALJ's determination at Step Five—that Plaintiff could perform other work—was not supported by substantial evidence. (Pl. Br. 27–29). Plaintiff contends that because Plaintiff's RFC did not properly reflect her limitations, the ALJ's hypothetical to the Vocational Expert ("VE") was flawed. (*Id.*) Accordingly, the ALJ could not rely on the VE's testimony as substantial evidence that Plaintiff could work as a photocopy machine operator, laundry sorter, or bagger. (*Id.*) Defendant responds that the ALJ need only include credibly established limitations in the hypotheticals posed to the VE. (ECF No. 13, Def. Br. 22–23).

"Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citation omitted). The ALJ not need to submit every one of a plaintiff's alleged limitations to the VE, only those that are "credibility established." *Rutherford*, 399 F.3d at 554. If an ALJ conveys to the VE all

18

credibly established limitations, the VE's testimony that the plaintiff can perform other work constitutes substantial evidence. *See McDonald v. Astrue*, 293 F. App'x 941, 946–47 (3d Cir. 2008) ("Because the hypothetical was adequate, the vocational expert's testimony regarding other work provided substantial evidence for the ALJ's conclusion.").

We have found that the RFC adequately encompasses Plaintiff's physical impairments. *Supra* Sec. IV(B)(i), (iii). In the administrative hearing, the ALJ conveyed the RFC limitations to the VE in a hypothetical. (R. at 64–65). Because the ALJ properly recounted all of Plaintiff's credibly established physical limitations in her hypothetical, Plaintiff's Step Five challenge fails as to Plaintiff's physical impairments. For the reasons stated above, *supra* Sec. IV(B)(ii)(1), we also find that the ALJ adequately relayed Plaintiff's capacity to concentrate, persist, and maintain pace by including a "simple tasks" limitation in the hypothetical posed to the VE, (*id.*)

However, Plaintiff also argues that the ALJ did not properly account for Plaintiff's moderate limitation in her ability to interact with other when questioning the VE, as the ALJ only included a limitation concerning interaction with the general public, not supervisors. (Pl. Br. 27–28); (R. at 65). We have addressed this argument above, *supra* Sec. IV(B)(ii)(2), and will not repeat ourselves here. Because this issue may be resolved on remand, we decline to reach it.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Plaintiff's applications for benefits is **VACATED** and **REMANDED** for further administrative proceedings consistent with this Opinion. An Order follows.

Dated: 03/29/2022            /s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge